**Bill J. SHOLER, Trustee in the Bankruptcy Case In Re: Donald B. Hamilton and Cheri Hamilton, (Cause No. 7–89–0000426–RA), Plaintiff,**

v.

**SECURITY FEDERAL SAVINGS AND LOAN ASSOCIATION OF ALBUQUERQUE, Defendant.**

**No. CIV 89–0368 JC.**

United States District Court, D. New Mexico.

Jan. 25, 1990.

Barbara Pryor, Pongetti, Wilson and Pryor, P.C., Albuquerque, N.M., for plaintiff.

Geoffrey D. Rieder, Modrall, Sperling, Roehl, Harris and Sisk, Albuquerque, N.M., for defendant.

## MEMORANDUM OPINION AND ORDER

CONWAY, District Judge.

This matter is now before the Court on the defendant's Motion for Summary Judgment, filed October 30, 1989. Having reviewed the memoranda of the parties, and being otherwise fully advised in the premises, the Court finds that the motion is well-taken and will be granted.

This is a claim for breach of an implied contract of employment and wrongful discharge in violation of the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq., henceforth "ERISA." The undisputed facts are as follows:

1. The defendant is a federally chartered savings and loan association organized under the Home Owners Loan Act of 1933 and subject to the authority of the Federal Home Loan Bank Board.

2. The plaintiff began employment with the defendant in late April of 1986, and was terminated on February 10, 1989.

3. At the time of his termination, Mr. Hamilton was an officer of the defendant and served in the position of Senior Vice President.

4. The plaintiff did not have a written contract of employment with the defendant.

5. The defendant periodically revised its Employee Manual, and such a revision occurred during the pendency of the plaintiff's employment.

6. As a result of these revisions, there were two separate employment manuals in effect at the time of the plaintiff's employment.

7. The plaintiff was in attendance at the board meeting on January 23, 1989, when the Board adopted the revised Employee Manual which was in effect at the time of the plaintiff's termination.

8. The revised Employee Manual, effective February 1, 1989, reads in part:

> This handbook is not intended to and does not create a contract of employment between any employee and the Association. All employees are employees-at-will.

9. The plaintiff was 100% vested in the employer contributions to the Security Federal Savings Plan as of December 31, 1988.

The plaintiff contends that his termination breached an implied contract of employment which originated in the assurances of the defendant that he had an unascertainable degree of job security as long as he adequately performed his job. The plaintiff further contends that in reliance on these promises, he resigned his previous job to accept a position with the defendant. As an alternate basis for his claim, the plaintiff relies on policies set forth in the first Employee Handbook, which was in effect at the time of his employment with the defendant. According to the plaintiff, he was entitled to a series of disciplinary and warning procedures prior to termination. Plaintiff asserts that he never received the benefit of any of these procedures.

The plaintiff's second contention is that he was wrongfully discharged based on the defendant's desire to prevent the plaintiff from becoming 100% vested in the defendant's pension plan. The alleged wrongful discharge is presumed by the plaintiff to be actionable under 29 U.S.C. § 1140 and ERISA.

In response, and as the first basis for summary judgment, the defendant argues that the claim of breach of an implied employment contract claim is pre-empted by federal regulations promulgated by the Home Loan Bank Board. In the alternative, the defendants urge that the applicable Employee Manual expressly negates any intention to create an implied contract, and expressly establishes that employment is terminable at will. As to the second claim, the defendants urge that the plaintiff was in fact fully vested of his pension benefits, and that regardless of the status of those benefits, the defendant lacked the specific intent necessary to establish an ERISA violation. The Court will treat each of these contentions in turn.

PART I

■ As a preliminary matter, the Court recognizes that the defendant is a savings and loan institution chartered by the Federal Home Loan Bank Board ("FHLB") pursuant to the Home Owners Loan Act of 1933. As such, the defendant is subject to the regulatory authority of the FHLB pursuant to 12 U.S.C. § 1464. The FHLB has adopted regulations which cover "the powers and operations of every Federal savings and loan association from its cradle to its corporate grave." *Fidelity Federal Savings and Loan Association v. De La Questa*, 458 U.S. 141, 145, 102 S.Ct. 3014, 3018, 73 L.Ed.2d 664 (1982). The Supreme Court has held that such regulations have the force and effect of statute and pre-empt all conflicting state laws. *De La*

*Questa,* 458 U.S. at 141, 151, 102 S.Ct. 3014, 3021. The FHLB regulations provide that a savings and loan may "only" enter into a contract of employment if it is "in writing" and is specifically approved by the Board of Directors. 12 C.F.R. § 563.39. Absent such a written contract, the regulations provide that an officer may be discharged at the discretion of the Board of Directors without liability. 12 C.F.R. § 552.6–2.

The presumption is thus established that, absent a written employment contract, the defendant could not have entered into any specific employment relationship with the plaintiff which exceeded the scope of an at-will employment relationship. It is undisputed that the plaintiff in this case lacked such a written contract. In order to refute this presumption, the plaintiff must set forth some argument regarding the inapplicability of the referenced regulations to his case.

By way of response, the plaintiff stresses that his claim for breach is grounded in the written Employee Manual and Policy Manual, which he was provided by the defendant. This claim, which the plaintiff calls breach of an implied contract of employment, purportedly is recognized by established New Mexico law, and arguably provides additional rights and protections to employees outside the scope of a written contract. The plaintiff argues that the implied contract theory does not conflict with the federal regulations, but rather complements federal law by further defining the scope of the employer/employee relationship.

Assuming, arguendo, that the plaintiff has actually stated a colorable claim under state law for breach of an implied employment contract, he has offered no explanation of how that contract should be enforced in light of 12 C.F.R. 552.6–2. In other words, even assuming that 12 C.F.R. 563.39 does not pre-empt the implied contract theory, a plain reading of 12 C.F.R. 552.6–2 in conjunction with the facts of this case dictates that state law clearly conflicts with the regulations. The relevant portions of 552.6–2 read as follows:

Removal. Any officer may be removed by the Board of Directors whenever in its judgment the best interests of the association will be served thereby; ...

To conclude that in the absence of a written agreement an implied employment contract arises under state law which would modify the employer/employee relationship would be equivalent to suggesting that a board of directors is hampered in its efforts to remove an officer at will. This is clearly not the intent of the regulations, and is not a result which will be condoned by this Court.

"... whenever the [FHLB], pursuant to [its] plenary authority, promulgates a regulation governing an aspect of the operation of federal savings and loan associations, that regulation governs exclusively and preempts any attempt by a state to regulate in that area."

*Glendale Federal Savings and Loan Association v. Fox,* 459 F.Supp. 903, 910 (C.D. Cal.1978). *See also, Rettig v. Arlington Heights Federal Savings and Loan Association,* 405 F.Supp. 819, 823 (N.D. Ill. 1975).

The Court will grant the defendant's Motion for Summary Judgment on this issue pursuant to its finding that the defendant is entitled to judgment as a matter of law, because the federal regulations pre-empt the application of a state contract law theory. Furthermore, there are no disputed issues of material fact which would prevent the entry of judgment in the defendant's favor. Having reached this conclusion, the Court need not address the defendant's alternative argument that the Employee Manual was not intended to create an implied contract of employment.

PART II

■ Turning now to the second claim, wrongful termination in violation of ERISA, the Court reiterates its finding that the plaintiff was fully vested of his pension rights at the time of his discharge. The plaintiff acknowledges this at page 18 of his Memorandum in Opposition to the Defendant's Motion for Summary Judgment. The plaintiff further acknowledges that the proper avenue of inquiry with re-

gard to this claim is whether the defendant had a specific intent to deprive the plaintiff of his pension benefits. *See, Clark v. Resistoflex Co.*, 854 F.2d 762, 770 (5th Cir. 1988). Having made these concessions, the plaintiff argues that he has sufficient circumstantial evidence to warrant submission of this cause to a jury on the issue of the defendant's purported specific intent to deny the plaintiff his pension benefits. The Court disagrees.

When considering a motion for summary judgment, the trial court should grant the motion where the party resisting fails to present sufficient evidence to establish the existence of an essential element of his case on which he bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In resisting a motion for summary judgment, the non-moving party must therefore submit sufficient evidence so as to create a genuine issue for trial, and a sufficient basis for a jury to return a verdict for that party. *Anderson*, 477 U.S. at 251, 106 S.Ct. at 2511. Once properly supported, a defense motion for summary judgment shifts the burden to the plaintiff to support each element of his case with sufficient evidence. As stated in *Anderson:*

> The mere existence of a scintilla of evidence in support of the plaintiff's position wil be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict ...

477 U.S. at 252, 106 S.Ct. at 2512.

The defendant has properly supported its summary judgment motion by the introduction of the affidavit of one Robert Voeste, the administrator of the defendant's pension plan. Voeste's affidavit states that the plaintiff was indeed vested in the pension plan, and that all calculations made with regard to the plaintiff's plan were made in accordance with those of *every* employee. In addition, Voeste states that the plaintiff was properly credited more than one year before he was terminated.

In addition, the affidavit of one DeWald, president of the defendant, establishes that the plaintiff's termination was not recommended for the purpose or intention of affecting the plaintiff's pension. Finally, the plaintiff conceded at his deposition that he had "no idea" why he was terminated, and acknowledged that no one ever told him that he was being fired to prevent his pension from vesting. (Exhibit 1—Deposition of Hamilton, p. 418–419).

In response, the plaintiff urges that the defendant cannot show that he was terminated for poor performance as stated by Mr. DeWald. The plaintiff offers the affidavit of Tony Catanach, a former president of the defendant who denies that the plaintiff was guilty of poor performance. The plaintiff's argument misses the point. The Catanach affidavit only refutes the allegations of poor performance; it does nothing to establish or indicate that the defendant terminated the plaintiff to affect his pension benefits. In fact, the plaintiff has offered *no* other evidence of specific intent, a necessary element of his claim. As such, there is no basis for a jury to find that the plaintiff was wrongfully terminated because of the accrual, or impending accrual, of his pension benefits.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, and the clear directives of *Anderson* and *Celotex*, this Court has no option but to grant summary judgment on the wrongful termination claim.

Wherefore,

IT IS ORDERED, ADJUDGED AND DECREED that the defendant's Motion for Summary Judgment be, and hereby is, granted.