Willard H. RUSH, Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE COR-PORATION, a corporate instrumentality of the United States of America, as Manager of the Federal Savings and Loan Insurance Corporation Resolution Fund; Federal Deposit Insurance Corporation, a corporate instrumentality of the United States of America, as Receiver for Centennial Savings and Loan Association; Jeffry G. Locke; Anthony C. La Scala; and Great Western Bank, Defendants.

No. C-89-4535 SAW.

United States District Court,
N.D. California.

Oct. 4, 1990.

Michael P. Merrill, Eric T. Davis, Merrill & Arnone, Santa Rosa, Cal., for plaintiff.

John W. Crittenden, Richard Frank, Cooley, Godward, Castro, Huddleson & Tatum, San Francisco, Cal., Dina L. Biblin, Counsel, Legal Div., FDIC, Washington, D.C., Michael Heumann, Stephen P. Wiman, Fine, Perzik & Singman, Los Angeles, Cal., for defendants.

## MEMORANDUM AND ORDER

WEIGEL, District Judge.

Plaintiff's suit is bottomed on a contract with Centennial Savings & Loan ("Centennial") that guaranteed him one year's salary if Centennial terminated him without cause. The amount of that salary was $105,000. Based upon that contract, plaintiff sues the Federal Deposit Insurance Corporation in its corporate capacity ("FDIC Corporate") and the Federal Deposit Insurance Corporation as Receiver for Centennial ("FDIC Receiver") for three claims: (1) breach of contract; (2) failure to provide benefits under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq.; and (3) deprivation of property without due process of law, in violation of the fifth amendment.[1] Plaintiff also sues Jeffry Locke, Special Representative for the Federal Savings & Loan Corporation as Receiver ("FSLIC Receiver"), for deprivation of property without due process of law, pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[2]

---

**1.** Both the FDIC and the FSLIC act in two distinct capacities—as receiver and as corporation. Therefore, it is appropriate for this Court to treat FDIC Corporate and FDIC Receiver as two distinct entities for the purpose of this lawsuit. *See Federal Savings & Loan Insurance Corp. v. Locke,* 718 F.Supp. 573, 579 (W.D.Tex.1989).

**2.** Plaintiff also sues Great Western Bank and Anthony La Scala, Chief Executive Officer of

Centennial Savings & Loan. These defendants have not joined the instant motions to dismiss and to strike.

Plaintiff's complaint is based upon the actions of the FSLIC in both its corporate and receivership capacities. In addition, FSLIC acquired the liabilities of Centennial, including plaintiff's claim for severance pay. Pursuant to the Financial Institutions Reform, Recovery and Enforce-

In August 1985 the Federal Home Loan Bank Board ("FHLBB") appointed FSLIC as receiver for Centennial, converting Centennial into a federally chartered savings and loan. Centennial contracted with defendant Great Western Bank to provide a management team for Centennial. Centennial hired plaintiff, a former Great Western employee, as Chief Operating Officer on the management team.

By March 16, 1987, rumors circulated that Centennial's liquidation was imminent. Plaintiff alleges that on that day he entered into a written severance agreement with defendant Anthony La Scala, Chief Executive Officer of Centennial, which guaranteed plaintiff one year's salary in the event that his employment was terminated by Centennial for any reason other than "for cause."

On April 24, 1987, the FHLBB declared Centennial insolvent and appointed the FSLIC as receiver for Centennial for the purpose of liquidating its assets. Further, the FHLBB announced the termination of all outstanding employment contracts with Centennial, pursuant to 12 C.F.R. § 563.39.[3] Defendant Locke, as Special Representative for FSLIC Receiver, notified plaintiff that all employment contracts, including his severance agreement, were terminated by "operation of law" as a result of the FHLBB's declaration of Centennial's insolvency and its appointment of the receiver. On October 26, 1989, following plaintiff's repeated requests for an administrative determination on his claim for his one year's salary of $105,000, defendant FDIC Receiver sent plaintiff a Receiver's Determination disallowing the claim.

Defendants FDIC Receiver, FDIC Corporate, and Locke move to dismiss the claims against them. In addition, defendants FDIC Corporate and FDIC Receiver move to strike plaintiff's prayer for prejudgment interest and punitive damages against them.

## I. Breach of Contract (Count I)

■ Defendants FDIC Corporate and FDIC Receiver move to dismiss plaintiff's breach of contract claim for failure to state a claim. Their motion must be sustained. Under 12 C.F.R. § 563.39(b)(5), all obligations under employment contracts between an FSLIC insured institution and its employees are terminated by operation of law when the FHLBB determines that the institution is in an unsafe or unsound condition. The regulation provides in relevant part:

All obligations under the [employment] contract shall be terminated, except to the extent determined that continuation of the contract is necessary for the continued operation of the institution ... (ii) ... when the association is determined by the [Federal Home Loan Bank] Board to be in an unsafe or unsound condition. Any rights of the parties that have already vested, however, shall not be affected by such action.

*Id.* The regulation requires that each employment contract contain a term that states this provision of law. 12 C.F.R. § 563(b). If not included, the provision is nonetheless read into an employment contract as an implied term. *Wilde v. First Federal Savings & Loan Ass'n of Wilmette,* 134 Ill.App.3d 722, 89 Ill.Dec. 493, 496, 480 N.E.2d 1236, 1239 (1985).

Under Section 563.39(b)(5), rights that have vested prior to the regulation's triggering events are not terminated. The FDIC defendants claim that plaintiff's right to severance pay was not vested; hence termination occurred automatically, pursuant to Section 563.39(b)(5). Plaintiff, on the other hand, contends that the severance agreement vested when formed. Defendants' claim is valid.

ment Act of 1989, 12 U.S.C. §§ 1811 et seq., Congress abolished the FSLIC. The FDIC, as manager of the FSLIC Resolution Fund, became the successor in interest to the FSLIC. *See* 12 U.S.C. § 1821a. Except in its role as successor in interest to the FSLIC's liabilities, the FDIC defendants have no direct involvement with plaintiff's claims.

**3.** Defendants request the Court to take judicial notice of Federal Home Loan Bank Board Resolution Nos. 87–475 & 87–476 (Apr. 24, 1987), and attach copies of these resolutions. The Court takes notice of these resolutions pursuant to Federal Rule of Evidence 201(d).

■ The first question the Court confronts is which law to apply in determining whether the severance agreement had vested prior to the FHLBB declaring Centennial insolvent. Plaintiff urges the Court to apply California law, which he claims supports his argument that the severance agreement vested when formed, one month before his employment was terminated pursuant to Section 563.39(b)(5).[4] Defendants argue that federal law governs the vesting question. Although there is a paucity of case law on this issue, defendant has the better argument. Congress has developed a comprehensive scheme for regulating the savings and loan industry; thus federal regulations governing the savings and loan industry preempt attempts by states to regulate in that field. *Sholer v. Security Federal Savings & Loan Ass'n*, 736 F.Supp. 1083, 1085 (D.N.M.1990). "Federal common law rather than state law has been invoked in cases involving FSLIC's rights and obligations." *Federal Savings & Loan Insurance Corp. v. Quinn*, 711 F.Supp. 366 (N.D.Ohio 1989). Accordingly, this Court will apply federal common law.

Only two published decisions have considered the question of when vesting occurs under Section 563.39. *See, e.g., Quinn*, 711 F.Supp. 366; *Wilde*, 89 Ill.Dec. 493, 480 N.E.2d 1236. The plaintiffs in both cases sued for severance benefits under contracts terminated pursuant to Section 563.39, alleging that their rights under the contracts had vested before termination. As in the instant case, the contracts had provided for benefits if termination occurred without cause. Both courts found that the plaintiff's rights had not vested, but were terminated by operation of law. In *Wilde*, the court reasoned that "termination without cause" was a condition precedent to vesting of the agreement. Since plaintiff's contract expired by operation of law prior to the actual termination of his employment, vesting could not have taken place. *Wilde*, 89 Ill.Dec. at 499, 480 N.E.2d at 1242. In *Quinn*, the court

resorted to federal common law involving ERISA to determine the definition of vesting. Under ERISA, the term "vested" has been defined to mean an *unconditional* claim arising from a plan participant's service. Since the plaintiff was terminated by operation of law prior to the triggering event of "termination without cause," his right was conditional, and accordingly, not vested. *Quinn*, 711 F.Supp. at 379.

Although this Court is not bound to follow these precedents, they are well-reasoned in light of the policy underlying Section 563.39. This regulation is necessary to relieve a troubled or insolvent savings and loan institution from burdensome obligations such as substantial contracts for severance pay. The interpretation that plaintiff urges—that severance agreements vest upon formation—denies the FSLIC the flexibility it required to manage unsound savings and loan associations. Therefore, the Court grants the FDIC defendants' motion to dismiss with respect to plaintiff's breach of contract claim.

## II. Denial of Benefits under ERISA (Count III)

■ Defendants FDIC Corporate and FDIC Receiver contend that plaintiff's claim under ERISA, 29 U.S.C. §§ 1001 et seq., should be dismissed for failure to state a claim. Defendants argue again that any right plaintiff had to ERISA benefits was terminated by operation of federal law.

Both parties concede that this contention involves the same issue as that concerning the breach of contract claim, namely, whether the severance agreement was "vested" within the meaning of 12 C.F.R. § 563.39. For the reasons stated above, plaintiff's claim under the severance agreement was not vested. Nor does ERISA guarantee that employee welfare benefits such as severance agreements are vested or nonforfeitable. *West v. Greyhound Corp.*, 813 F.2d 951, 954 (9th Cir.1987). In the absence of specific vesting require-

---

**4.** The Court notes that the two California cases plaintiff cites to support this position did not involve Section 563.39 or any other federal law. They are also factually distinguishable. *See*

*Suastez v. Plastic Dress-up Co.*, 31 Cal.3d 774, 183 Cal.Rptr. 846, 647 P.2d 122 (1982); *Chapin v. Fairchild Camera & Instrument Corp.*, 31 Cal. App.3d 192, 107 Cal.Rptr. 111 (1973).

ments under ERISA, the Court must read the agreement as a whole to determine whether plaintiff had acquired a vested right to severance pay. *Sly v. P.R. Mallory & Co.*, 712 F.2d 1209, 1213 n. 4 (7th Cir.1983). Since plaintiff's severance agreement was conditional and not vested, the Court grants defendants' motion to dismiss plaintiff's claim under ERISA.

### III. *Constitutional Tort Against Both FDIC Defendants (Count VII)*

■ Defendants FDIC Corporate and FDIC Receiver contend that plaintiff's claim for violation of his fifth amendment due process rights must be dismissed for lack of subject matter jurisdiction. This argument is well-taken. "In a suit against the United States, there cannot be a right to money damages without a waiver of sovereign immunity." *United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976). Plaintiff, however, contends that Congress waived the government's sovereign immunity by providing that the FDIC may "sue and be sued." 12 U.S.C. § 1819.

In an analogous decision, the Ninth Circuit recently held that the "sue and be sued" language of the U.S. Postal Service's charter should not be construed as widening the limited waiver of sovereign immunity for tortious acts of a federal agency's employees specified by the Federal Tort Claims Act ("FTCA"). *Pereira v. United States Postal Serv.*, 899 F.2d 861, 864 (9th Cir.1990). Since the FTCA waives sovereign immunity only if such torts would give rise to liability under state law if committed by a private person, 28 U.S.C. § 1346(b), and constitutional torts are founded on federal, not state law, the court reasoned that federal district courts have no jurisdiction over constitutional claims against the U.S. Post Office. *Id.; accord Taylor v. Federal Home Loan Bank Bd.*, 661 F.Supp. 1341, 1348 (N.D.Tex.1986) (federal constitutional torts barred against federal agency defendants by the FTCA); *Fayerweather v. Bell*, 447 F.Supp. 913, 916 (M.D.Pa.1978) (United States Justice Department cannot be sued for money damages except when expressly provided for by the FTCA). Since plaintiff cannot allege a constitutional tort under the FTCA, the sovereign immunity of the United States and its agencies remains intact.

Nonetheless, plaintiff argues that since the FTCA does not apply to the instant suit his constitutional claim against the FDIC defendants cannot be barred. Yet the Ninth Circuit rejected this argument with respect to constitutional torts asserted against the U.S. Postal Service. *Pereira*, 899 F.2d at 864; *cf. Safeway Portland Employees' Federal Credit Union v. Federal Deposit Insurance Co.*, 506 F.2d 1213, 1215 (9th Cir.1974) (FTCA exclusive remedy for tort claims against the FDIC, even if claim barred by the FTCA). The Ninth Circuit's decision in *Woodbridge Plaza v. Bank of Irvine*, 815 F.2d 538 (9th Cir.1987), does not hold to the contrary. In *Woodbridge*, the court held that a claim for ratable distribution of receivership assets was not a tort claim and was thus wholly outside the FTCA. *Id.* at 542–43. Therefore, the court held that the claim was cognizable under the FDIC's "sue and be sued" clause, 12 U.S.C. § 1819.

Because plaintiff sues federal agency defendants for money damages, and there is no applicable waiver of sovereign immunity, this Court is without subject matter jurisdiction to hear plaintiff's due process claim against FDIC Corporate and FDIC Receiver.

### IV. *Bivens Claim Against Defendant Locke (Count VIII)*

■ Defendant Locke urges the Court to dismiss plaintiff's fifth amendment due process claim against him on the grounds that he has both absolute and qualified immunity from suit. The Court need not address the question of absolute immunity, however, since defendant Locke is at a minimum qualifiedly immune from plaintiff's constitutional claim. The Supreme Court has directed the federal courts to decide the question of qualified immunity before discovery has been conducted, based on whether the federal official's conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v.*

*Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The Supreme Court has elaborated: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

Defendant Locke easily meets this standard. First, since plaintiff had no vested right to payment under the severance agreement, he had no "clearly established rights" of which Locke could have known. Even if the severance agreement were vested, defendant could not be held liable, since only two courts have ever considered the Section 563.39 vesting issue in published opinions, and both found that the agreements were *not* vested under circumstances similar to the instant case. Although the fifth amendment right to due process is itself well established, defendant Locke had absolutely no basis for believing that he would be depriving plaintiff of any protected right by merely notifying plaintiff that his contract was terminated pursuant to federal regulation. Defendant possesses at least qualified immunity for such limited conduct. For these reasons, the Court finds that defendant Locke is qualifiedly immune from suit.

### V. *Defendants' Motion to Strike*

Since the Court grants defendants' motion to dismiss in its entirety, leaving no claims outstanding against defendants FDIC Corporate, FDIC Receiver, and Locke, there is no need to consider defendants' motion to strike plaintiff's claims for prejudgment interest and punitive damages.

Accordingly,

IT IS HEREBY ORDERED that defendants FDIC Corporate's and FDIC Receiver's motion to dismiss Count I, Count III, and Count VII is GRANTED. Defendant Jeffry Locke's motion to dismiss Count VIII is also GRANTED.